**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

JONATHAN APODACA; JOSHUA
VIGIL, on behalf of themselves and
all others similarly situated,

Plaintiffs-Appellees,

v.

RICK RAEMISCH, Executive
Director, Colorado Department of
Corrections, in his individual
capacity; TRAVIS TRANI, Warden,
Colorado State Penitentiary, in his
individual capacity,

Defendants-Appellants.

No. 15-1454

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CV-00845-REB-MJW)**
_____

Chris W. Alber, Senior Assistant Attorney General, Denver, Colorado
(Cynthia H. Coffman, Attorney General, with him on the briefs), for
Defendants-Appellants.

Elisabeth L. Owen, Prisoners' Justice League of Colorado LLC, Denver,
Colorado, for Plaintiffs-Appellees.
_____

Before **TYMKOVICH**, Chief Judge, **BACHARACH**, and **MORITZ**,
Circuit Judges.
_____

**BACHARACH**, Circuit Judge.

_____

Two inmates were kept in administrative segregation at a Colorado prison for roughly eleven months. During that time, the inmates were allegedly prohibited from exercising outdoors, although they were brought to a "recreation room" five times each week. The alleged prohibition on outdoor exercise led the two inmates to sue the prison warden and the director of the Colorado Department of Corrections, invoking 42 U.S.C. § 1983 and claiming violation of the Eighth Amendment. For these claims, the inmates relied largely on a published opinion in our court, *Perkins v. Kansas Department of Corrections*, 165 F.3d 803 (10th Cir. 1999).

The warden and director moved to dismiss, arguing that (1) the alleged prohibition on outdoor exercise did not violate the Eighth Amendment and (2) qualified immunity applies. For these arguments, the warden and director distinguish *Perkins*, relying largely on an unpublished opinion in our court, *Ajaj v. United States*, 293 F. App'x 575 (10th Cir. 2008).

The district court denied the motion to dismiss, reasoning that the two inmates had stated a plausible claim for relief. Because the warden and director enjoy qualified immunity, we reverse. We conclude that even if the alleged prohibition on outdoor exercise had violated the Eighth

2

Amendment, the underlying constitutional right would not have been clearly established.

The right would not have been clearly established because existing precedent would have left the constitutional question within the realm of reasonable debate. The underlying right turns on our opinion in *Perkins*. But *Perkins* can be read either expansively or narrowly. Under an expansive reading, *Perkins* would squarely prohibit the alleged denial of outdoor exercise for eleven months. But, under a narrow reading, *Perkins* would apply only to denials of *out-of-cell* exercise—a situation not present here. We need not decide which reading is correct. Because *Perkins* is ambiguous, our opinions do not clearly establish that an eleven-month deprivation of outdoor exercise would violate the Eighth Amendment.

## I. Appellate Jurisdiction

Before addressing the merits, we must ensure our jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The two inmates challenge jurisdiction based on the absence of certain factual findings in district court. This challenge fails, for we have jurisdiction under the collateral-order doctrine.

In appeals from district court decisions, we generally obtain jurisdiction under 28 U.S.C. § 1291, which creates appellate jurisdiction over "final decisions." In this case, the warden and director are appealing

3

the district court's denial of a motion to dismiss.[1] This denial is not a final judgment. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009) (recognizing that a similar denial did not constitute a final judgment). But under the collateral-order doctrine, some rulings are immediately appealable notwithstanding the absence of a final judgment. *Id.*; *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). These rulings contain decisions that are collateral to the merits but too important for us to deny review and too independent of the underlying claim for us to postpone review. *Iqbal*, 556 U.S. at 671.

Here the district court denied qualified immunity to the warden and director, reasoning that the underlying constitutional right had been clearly established. This ruling generally falls within the collateral-order doctrine, for qualified immunity serves to protect the defendant not just from personal liability but also from the ordeal of litigation. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The collateral-order doctrine is triggered only if the appeal turns on a "'purely legal issue.'" *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). Thus, we may not reconsider

---

[1]     The defendants' motion was titled "Motion to Dismiss or Motion for Summary Judgment." This motion included arguments for summary judgment that are not presently before us. We therefore consider the motion solely as a motion to dismiss.

a district court's assessment of which facts could be proven at trial. *Walton v. Powell*, 821 F.3d 1204, 1209-10 (10th Cir. 2016).

The issue here is legal, not factual. Because qualified immunity arises here on a motion to dismiss, we must credit all of the plaintiffs' well-pleaded allegations. *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). Thus, our decision regarding qualified immunity does not hinge on any factual disputes. *See Iqbal*, 556 U.S. at 678.[2] In the absence of factual disputes, we confront a purely legal issue: whether the underlying constitutional right was clearly established. *Ortiz*, 562 U.S. at 188. Thus, we have appellate jurisdiction under the collateral-order doctrine.

## II.    The Standard of Review, the Standard for Qualified Immunity, and the Plaintiffs' Pleading Burden

Qualified immunity protects public officials who are required to exercise their discretion, shielding them from personal liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *Schwartz*,

---

[2]    The inmates argue that jurisdiction is absent because the warden and director base their argument on the differences between the facts here and in our prior cases. We disagree. The warden and director are asserting qualified immunity based on the facts alleged in the inmates' complaint. The warden and director refer to the facts in our prior cases only to shed light on whether the underlying constitutional right was clearly established. These so-called arguments about "facts" are, in reality, centered on the abstract legal principle of whether the inmates' alleged facts were governed by our existing precedents. *See Iqbal*, 556 U.S. at 672 (stating that the denial of a motion to dismiss, rejecting a defense of qualified immunity, turned on an issue of law and was therefore immediately appealable).

5

702 F.3d at 579. This type of immunity applies when a public official's conduct does not violate clearly established rights that a reasonable person would have known about. *Schwartz*, 702 F.3d at 579.

We review de novo the district court's denial of a motion to dismiss based on qualified immunity. *Id.* In conducting this review, we consider whether the plaintiffs have alleged facts showing

- that the defendants violated a constitutional right and

- that the right was clearly established.

*See id.* But if the right were not clearly established, we may find qualified immunity without deciding the constitutionality of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009).

A constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent. *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011).[3] This precedent cannot define the right at a high level of generality. *Ashcroft v.*

---

[3] Alternatively, a right can be clearly established by a Supreme Court precedent or by the weight of authority from case law in other circuits. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003). But the plaintiffs do not rely on Supreme Court precedent or the weight of authority in other circuits; thus, we do not consider these potential sources for a clearly established right. *See Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1201 n.3 (10th Cir. 2017) (stating that the plaintiff must identify the authorities that create the clearly established right); *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (noting that we need not consider out-of-circuit authority unless the plaintiff brings this authority to our attention).

6

*al-Kidd*, 563 U.S. 731, 742 (2011). Rather, the precedent must be particularized to the facts. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). But even when such a precedent exists, subsequent Tenth Circuit cases may conflict with or clarify the earlier precedent, rendering the law unclear. *See Lane v. Franks*, 134 S. Ct. 2369, 2382-83 (2014).

A precedent is often particularized when it involves materially similar facts. *See White*, 137 S. Ct. at 552. But the precedent may be adequately particularized even if the facts differ, for general precedents may clearly establish the law when the defendant's conduct "'obvious[ly]'" violates the law. *See id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)). Thus, a right is clearly established when a precedent involves "'*materially similar conduct*'" or applies "'with *obvious clarity*'" to the conduct at issue. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016) (emphasis in *Estate of Reat*) (quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2008)), *cert. denied*, ___ U.S. ___, 137 S. Ct. 1434 (2017) (Mem.).

By requiring precedents involving materially similar conduct or obvious applicability, we allow personal liability for public officials only when our precedent puts the constitutional violation "'beyond debate.'" *White*, 137 S. Ct. at 551 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). Thus, qualified immunity protects all officials except

7

those who are "'plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Mullenix*, 136 S. Ct. at 308).

In the present case, we apply this test in light of the plaintiffs' pleading burden for a § 1983 claim based on the Eighth Amendment. *See DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). To satisfy this burden, the plaintiffs must make two plausible allegations: (1) the conditions were "'sufficiently serious' to implicate constitutional protection" and (2) the warden and director acted with "'deliberate indifference'" to the inmates' health. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

This appeal focuses on the first requirement, which addresses the seriousness of the deprivation. *Id.* The plaintiffs allege a deprivation of the right to exercise outdoors for roughly eleven months. For the sake of argument, we may assume that this deprivation would violate the Eighth Amendment. Even with this assumption, the warden and director would enjoy qualified immunity because the underlying constitutional right had not been clearly established.

Roughly three decades ago, we recognized a consensus in the case law regarding the importance of outdoor exercise for prisoners: "There is substantial agreement among the cases . . . that some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates . . . ." *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th

8

Cir. 1987) (per curiam). But we also made clear that a denial of outdoor exercise does not per se violate the Eighth Amendment. *Id.*

In the absence of a per se violation, courts must examine the totality of the circumstances. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 810 n.8 (10th Cir. 1999). These circumstances include the length of the deprivation. *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (stating that the length of time that an inmate is exposed to the conditions "is often of prime importance" under the Eighth Amendment); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (stating that the inquiry under the Eighth Amendment turns in part on the duration of the deprivation).

## III.   The alleged constitutional right was not clearly established.

The plaintiffs rely on our published opinion in *Perkins v. Kansas Department of Corrections*. In *Perkins*, a prisoner invoked the Eighth Amendment, alleging a continuing inability to exercise outside of his cell for more than nine months. *Perkins*, 165 F.3d at 806-07, 809. The district court dismissed the claim, and we reversed. *Id.* at 805, 810.

In reversing, we expressed our holding in terms of the denial of "outdoor exercise." *Id.* at 810. But, as noted above, the plaintiff in *Perkins* had alleged the inability to exercise not only outdoors but also anywhere outside of his cell. *Id.* at 806-07. The resulting issue is whether our holding was

9

- expansive, prohibiting the extended denial of exercise *outdoors* or

- narrow, prohibiting only the extended denial of exercise outside of the *cell*.

The plaintiffs embrace the expansive interpretation of *Perkins*. This interpretation is reasonable based on four facts:

1. Our court referred seven times to the plaintiff's deprivation of "outdoor exercise." *Id.* at 805-06, 810.

2. Our court expressed the holding in terms of the denial of outdoor exercise. *Id.* at 810.

3. Our court relied in part on *Bailey v. Shillinger*, which had held that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates." *Id.* at 810 (quoting *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (per curiam)); *see* pp. 8-9, above.

4. A person deprived of out-of-cell exercise is, logically, also deprived of outdoor exercise. So, a precedent regarding the denial of "outdoor" exercise could encompass every situation involving the denial of out-of-cell exercise. But the reverse is not true. If the court meant to create a precedent regarding the denial of "out-of-cell" exercise, one might not expect the holding to be framed more broadly in terms of "outdoor" exercise.

The warden and director embrace the narrow interpretation of *Perkins*, insisting that it applies only to deprivations of out-of-cell exercise. This interpretation also appears reasonable based on the content of *Perkins* and the later unpublished opinion in *Ajaj v. United States*, 293 F. App'x 575 (10th Cir. 2008).

*Perkins* contains three features supporting a narrow interpretation:

10

1. The plaintiff alleged deprivation of exercise anywhere outside of his cell, not just outdoors. *Id.* at 807.

2. The court relied in part on *Housley v. Dodson*, which had involved a deprivation of exercise outside of the prisoner's cell rather than just outdoors. *Id.* at 810 (citing *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994)).

3. The court cited multiple cases from other circuits involving out-of-cell exercise. *Id.*

In addition, a narrow interpretation is supported by our unpublished opinion in *Ajaj*, where we held that a year-long deprivation of outdoor exercise did not violate the Eighth Amendment. *Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. 2008); *see Quinn v. Young*, 780 F.3d 998, 1012 n.4 (10th Cir. 2015) ("A recent unpublished opinion . . . further confirms our view that the Officers had no guidance concerning the propriety of the challenged [conduct] from extant clearly established law."). If *Perkins* is read broadly, *Ajaj* might appear to conflict with *Perkins*.[4]

Which reading of *Perkins* is correct? We need not decide that today. For now, it is enough to conclude that the question is within the realm of

---

[4] The *Ajaj* majority did not cite *Perkins*. In a concurrence, then-Chief Judge Henry implied that *Perkins* had established a precedent involving the denial of outdoor exercise. *See Ajaj*, 293 F. App'x at 590 (Henry, C.J., concurring). But Chief Judge Henry then seemed to detract from this approach, concluding that the defendants were entitled to qualified immunity in part because "prison officials [had] afforded [Mr. Ajaj] regular solitary indoor exercise opportunities." *Id.* at 591.

11

reasonable debate, for *Perkins* can be read either expansively or narrowly. *See A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1147 & n.12 (10th Cir. 2016) (concluding that the law was not clearly established when the plaintiff had relied on an opinion that "could be reasonably read" in a way that led the defendant to "reasonably believe[] (even if mistakenly)" that his actions were permissible); *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 378-79 (2009) (concluding that the law was not clearly established by a prior Supreme Court opinion because it had been read differently by "well-reasoned" judges in cases that were "numerous enough").

The availability of conflicting interpretations is unsurprising in light of our competing principles guiding interpretation of precedents like *Perkins*. On the one hand, "[t]he language of a judicial decision must be interpreted with reference to the circumstances of the particular case and the question under consideration." Bryan A. Garner et al., *The Law of Judicial Precedent* 80 (2016). In *Perkins*, these circumstances involved the denial of any exercise opportunities outside of the prisoner's cell. *See* pp. 9-11, above.

But on the other hand, "'[t]he discovery of what facts are material in any decision is by no means easy.'" Bryan A. Garner et al., *The Law of Judicial Precedent* 80 (2016) (citation omitted). Generally, we ascertain the materiality of individual facts based on which ones are emphasized in a

12

given opinion. *See id.* at 81 ("Most cases combine law and fact in ways that emphasize the central role of the facts."). In *Perkins*, the court appeared to emphasize that the plaintiff was prohibited from exercising outdoors. *See* pp. 9-10, above.

At a minimum, *Perkins* would not render the warden and director "plainly incompetent" for failing to recognize a constitutional prohibition against an eleven-month ban on outdoor exercise. *Perkins*'s ambiguity means that our circuit has not clearly established a right to outdoor exercise over an eleven-month period. As a result, the warden and director are entitled to qualified immunity.[5]

## IV. The defendants did not knowingly violate the Constitution.

The Supreme Court has recognized that liability extends not only to "'plainly incompetent'" officials but also to officials who "'knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *see Ziglar v. Abbasi*, 582 U.S. ___, 2017 WL 2621317, slip. op. at 29 (June 19,

---

[5] The two inmates also rely on *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) and *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994). But *Fogle*'s discussion of the duration of the deprivation was based on the standard for frivolousness and the subjective prong of the Eighth Amendment. *See Lowe v. Raemisch*, No. 16-1300, slip. op. at 8-10 (10th Cir. July 25, 2017) (to be published). And *Housley* involved the denial of exercise anywhere outside the cell (rather than a ban on outdoor exercise). *See id.* at 10. These differences could reasonably have led the warden and director to question the applicability of *Fogle* and *Housley*.

2017). Based on this language, the plaintiffs allege that the warden and director knew that they were violating the Constitution in light of a district court opinion addressing similar conditions at the same prison. Appellees' Resp. Br. at 24-25 (citing *Anderson v. Colorado*, 887 F. Supp. 2d 1133 (D. Colo. 2012)).

We reject this argument based on a key factual distinction with the district court case, a conflict with Supreme Court precedent, and the presence of an erroneous assumption.

First, the deprivation in the district court's earlier case spanned twelve *years*. *Anderson v. Colorado*, 887 F. Supp. 2d 1133, 1138 (D. Colo. 2012). Here the alleged deprivation lasted only about eleven *months*.

Second, the Supreme Court rejected a nearly identical argument in *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). There the Court concluded that a district court opinion, which identified the same defendant and said that his actions had been unconstitutional, did not clearly establish the underlying right because a district court's holding is not controlling in any jurisdiction. *al-Kidd*, 563 U.S. at 741-42. The same is true here.

Third, the plaintiffs suggest that a defendant's knowledge affects the availability of qualified immunity. We reject this suggestion, for there is a single standard: "whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Ziglar v. Abbasi*, 582 U.S. ___, 2017 WL 2621317, slip. op. at 29 (June 19,

14

2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2002)). If this standard is met, the defendant would be either plainly incompetent or a knowing violator of the law. *See id.* ("If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity.").

For these reasons, the district court's earlier ruling does not preclude qualified immunity. *See Lowe v. Raemisch*, No. 16-1300, slip op. at Part 2(d) (10th Cir. July 25, 2017) (to be published).

## V. Disposition

We conclude that the warden and director did not violate a clearly established constitutional right. Thus, the district court erred in denying the motion to dismiss.

Reversed and remanded with instructions to grant the motion to dismiss the personal-capacity claims based on qualified immunity.