**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

RONNIE M. CHANCE,

    Plaintiff - Appellant,

v.

JARRED ROBERTS; STARLA
PHILLIPS; SHARON MCCOY;
CHERI ATKINSON,

    Defendants - Appellees.

No. 22-7008
(D.C. No. 6:20-CV-00373-RAW-SPS)
(E.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Ronnie M. Chance, proceeding *pro se*, sued various Oklahoma prison officials

under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to be free

from cruel or unusual punishment.  The district court ruled against him on all of his

claims, and also made a number of procedural rulings with which he disagrees.  For

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the reasons explained below, we affirm in part, reverse in part, and remand for further proceedings.

## I.     BACKGROUND & PROCEDURAL HISTORY

At all times relevant to this lawsuit, Chance was a prisoner in the custody of the Oklahoma Department of Corrections (ODOC) and housed at the Jess Dunn Correctional Center.[1]  In August 2020, he filed a § 1983 lawsuit in the United States District Court for the Western District of Oklahoma, later transferred to the Eastern District.  The latter court screened his complaint and ordered him to amend it, which he did.  The amended complaint (still the operative complaint) named four prison officials (collectively, "defendants"):

- Jarrod Roberts, the prison's healthcare administrator;

- Starla Phillips, head of food services at the prison;

- Sharon McCoy, the warden; and

- Cheri Atkinson, an employee at ODOC's central office for medical matters.

Chance accused defendants of numerous wrongs, mostly having to do with failure to provide proper medical care.  Chance attached voluminous exhibits, such as the administrative grievances he filed about these issues.

---

[1] After this appeal was fully briefed, Chance discharged his sentence and was released from ODOC custody.  But, to the extent he could recover damages for his allegedly unconstitutional treatment in prison, his case is not moot.  *See, e.g.*, *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004).

The district court ordered ODOC to prepare a *Martinez* report concerning Chance's allegations.[2] About two-and-a-half months later, defendants filed the report, which largely focused on whether Chance had exhausted his administrative remedies. The report included numerous exhibits, most of which duplicated what Chance had already attached to his complaint.

Defendants then filed a motion to dismiss with an alternative request for summary judgment (MTD/MSJ). They argued, based on documents from the report, that Chance had not exhausted his administrative remedies as to any claim. They alternatively argued on the merits that he failed to state any viable claim, still relying on documents from the report. Finally, they argued that they were entitled to qualified immunity.

Chance responded in opposition.[3] Ultimately, the district court ruled:

---

[2] A *Martinez* report is a procedure first approved in *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). As we later explained, the district court may "direct prison officials to respond in writing to the [prisoner's] various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).

[3] Chance filed what he captioned as a cross-motion for summary judgment. But the document argued that there were "no grounds for dismissal or summary judgment in favor of the Defendants." R. vol. III at 314; *see also id.* at 348 ("For reasons set forth in this pleading the Defendants are not entitled to summary judgment or dismissal."). So, in substance, the document was a response, and the district court appropriately treated it as such. We accordingly reject Chance's argument that the district court should have treated this document as a true summary judgment motion.

- Chance had exhausted one of his claims (regarding the need for a medical diet), but that claim failed on the merits;

- an alleged equal protection violation was both unexhausted and failed on the merits;

- Chance failed to plead a proper supervisory-liability claim against McCoy or Atkinson; and

- Chance failed to exhaust all other claims.

Accordingly, the district court granted defendants' MTD/MSJ and entered final judgment.

Chance timely appealed, and we have jurisdiction under 28 U.S.C. § 1291. We will provide more details about Chance's claims, the parties' arguments, and the district court's reasoning as they become relevant to the issues addressed below.

## II.   STANDARD OF REVIEW

Because the district court treated one of its rulings—regarding supervisory liability—as a pure failure to state a claim, it dismissed under Federal Rule of Civil Procedure 12(b)(6).  As to the remainder of its rulings, the district court said it was granting summary judgment, presumably because it was relying on documents attached to the *Martinez* report.  We review both types of rulings de novo.  *See, e.g.*, *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011) (summary judgment); *Janke v. Price*, 43 F.3d 1390, 1391 (10th Cir. 1994) (dismissal for failure to state a claim).

4

## III.    ANALYSIS

### A.    Medical Need for a Special Diet

Chance pleaded that Phillips, Roberts, and McCoy violated his Eighth Amendment right to adequate food in prison between February and August 2019. The district court found that Chance exhausted this claim but it failed on the merits. Defendants argue on appeal, however, that Chance failed to exhaust all his claims—which would necessarily include this one.

To sort this out, we will first describe the exhaustion procedure generally. We will then describe how that procedure played out with respect to Chance's medical-diet claim, and how the district court resolved the exhaustion question. Then we will return to defendants' argument that he failed to exhaust the claim.

### 1.    Exhaustion of Administrative Remedies in Oklahoma Prisons

Prisoners may not sue based on prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). During the timeframe relevant to this lawsuit, Oklahoma required a prisoner to take the following steps to exhaust his or her claim:

1) talk to the appropriate staff member;

2) submit a written Request to Staff (RTS) on the approved form within seven days;

3) submit a written grievance on the approved form no more than fifteen days after receiving a response to the RTS; and

5

4) file an appeal on the approved form to the Administrative Review

Authority (ARA) (or, for medical complaints, to a separate entity known

as the Medical ARA) no more than fifteen days after receiving a

response to the grievance.

Also, if the prisoner has received no response to an RTS (see step 2) within

thirty days, then, no later than sixty days after submitting it, the prisoner "may file a

grievance" (see step 3) specifically about "the issue of the lack of response." R. vol.

III at 252.[4]

### 2.    Additional Background

We now turn to Chance's efforts to grieve the lack of a proper diet. The

record does not say whether Chance ever spoke informally with the relevant actors

about this issue, as required by step 1 of the grievance process. But defendants do

not argue that Chance failed to satisfy step 1. We will therefore focus on his efforts

to fulfill steps 2, 3, and 4. *Cf. Woodford v. Ngo*, 548 U.S. 81, 101 (2006) ("[T]he

PLRA exhaustion requirement is not jurisdictional . . . .").

The events relevant to Chance's medical-diet claim happened between January

and August 2019. In mid-January of that year, an outside physician saw Chance for

symptoms of gastroesophageal reflux disease (GERD) and recommended that he

---

[4] The district court described this feature of the grievance policy—*i.e.*, submitting a grievance about the lack of response to an RTS—as a mandatory step in the exhaustion process, if applicable. On appeal, Chance strenuously argues that the policy is permissive on this point, not mandatory. We need not resolve this question because we cannot find where the district court deemed any claim unexhausted for failure to file a grievance about the lack of response to an RTS.

adopt a "GERD diet." R. vol. III at 193. On February 4, Chance sent an RTS to Phillips (the prison's food service supervisor) stating that he had been "prescribed" a Mediterranean diet, and asking, "Do you offer this diet here?" R. vol. II at 73. Phillips responded on February 19 that the prison "offer[ed] healthy heart or vegetarian." *Id.*[5] During this same timeframe, Chance was corresponding with the prison chaplain, asking to change his religious preference to messianic Jew, and then to be placed on the list for a kosher diet.[6]

It is not clear what happened between February 19 and April 19. On the latter date, however, Chance signed a "Kosher/Halal Diet Request Form." *Id.* at 71. The form required the requesting inmate to agree, among other things, not to barter the prepackaged meals. The form also stated, "Due to ordering and shipping requirements, it can take up to 60 days before you begin receiving the diet, depending on the shipping and storage options available." *Id.* The chaplain approved Chance's request form the same day (April 19).

---

[5] In truth, it is difficult to say who responded to this RTS, or any of the other RTS's described below, because the signatures on these responses are illegible. But the court must draw reasonable inferences from the summary judgment record in Chance's favor. *See Twigg*, 659 F.3d at 997. It is a reasonable inference that the person to whom Chance directed an RTS is also the person who responded to it. Also, defendants do not claim that they were *not* the responders. Thus, for purposes of this order and judgment, the court will assume that the RTS addressee is also the responder.

[6] Several months later, during step 3 of the grievance process, Chance explained that a prison doctor told him he should try to get a kosher diet if a Mediterranean diet was not available.

The next relevant event came on May 7, when Chance submitted an RTS to "Ms. Phillips/Food Service." *Id.* at 79. He claimed he

> need[ed] kosher for MEDICAL reasons. I can not eat most
> of the food on your regular menu. . . . I know I was told
> by the chaplin [sic] that you have 60 days to put me on
> kosher but this is a medical problem not just religious. . . .
> Can you please fix this problem[?]

*Id.* at 79, 80.

While awaiting Phillips's response, Chance submitted an RTS to Roberts (the prison's healthcare administrator) on May 24. Chance again claimed that he had been prescribed a Mediterranean diet and asked, "Can you give me my Mediteranion [sic] diet or something equivalent to that for my dietary needs[?]" *Id.* at 449.

That same day, Chance sent a written message to his case manager, asking her to "verify that I have discussed with you problems with not receiving proper food for my dietary need and that you have tried to communicate these to food service through e-mail on two occasion[s] to Ms Phillips." *Id.* at 112. Later that day, the case manager responded, "We have spoke[n] about food issues several times. A hard copy & e-mailed copy of kosher meal approval was sent to food service." *Id.*

Chance sent another RTS to "Ms Phillips/Food Service" on June 3. *Id.* at 81. Similar to his May 7 RTS, he asserted, "I know I was told by the chaplin [sic] that you have 60 days to put me on kosher but this is a medical problem not just [a] religious problem." *Id.* at 82. He then added,

> [ODOC] has taken ever[y] penny from me for over four years[.][7] I can not buy my own food. I have been washing people's stuff so I can have something to eat on most night[s]. . . . Can you please give me my kosher [diet] so I can have something to eat[?]

*Id.*

The next day, June 4, Roberts responded to Chance's May 24 RTS. The response stated that there was "[n]o order for diet in medical record" and told Chance to discuss the issue at a medical appointment on June 11. *Id.* at 449.

On June 20, Chance formally grieved Phillips's failure to respond to his May 7 and June 3 RTS's. He asserted that he "signed for kosher [on] 4-19-19" but had not yet received it. *Id.* at 83. He also asserted that his case manager and another person (whose role is unknown) "have both sent numerous e-mail copies to Ms Phillips at Food Service," apparently referring to information about his dietary needs. *Id.* His request for relief was: "allow me the dietary nutritions that are legally, and prescribed to me." *Id.*

The next day, June 21, Chance formally grieved Roberts's June 4 response to his May 24 RTS (*i.e.*, the response telling him there was no diet prescription in his medical record). He claimed, "I have had very little to eat for several months. . . . I was approved for kosher on 4-19-19. I have had to find my own food." *Id.* at 84.

Both of Chance's grievances were received by the "Warden's Office" within four days of filing. *See id.* at 83, 84.

---

[7] This accusation relates to Chance's claim that he was being improperly charged for medications, discussed below.

On July 12, Phillips responded to Chance's May 7 and June 3 RTS's. It is not clear whether Chance's June 20 grievance prompted this response. In any event, Phillips simply wrote, "No response." *Id.* at 79, 81.

On August 1, Warden McCoy responded to Chance's June 20 grievance. She repeated the language from the kosher request form stating that it can take up to sixty days to begin receiving kosher meals. She also said that "[f]ood services verified on 8-1-19 that you have been receiving Kosher meals since 7-16-19." *Id.* at 85.

On August 12, Chance appealed McCoy's response to the ARA. He asserted he had been receiving kosher meals since July 23, not July 16, and in any event, "[t]his is after multiple staff member[s] requested that food service give me food that I could eat. I went 97 days with out proper amounts of food to eat. I was not supposed to . . . go more th[a]n 60 days." *Id.* at 86.[8]

On August 28, an ARA employee named Mark Knutson affirmed McCoy's response because, he said, Chance did not substantiate his appeal. Knutson then announced that this disposition meant Chance had "satisfied the exhaustion of administrative remedies." *Id.* at 88.

As part of the *Martinez* report submitted in this lawsuit, ODOC included an affidavit from Knutson. Knutson asserted that Chance exhausted his administrative remedies as to his claim "regarding a prescribed Kosher diet." R. vol. III at 22,

---

[8] Chance's claim of ninety-seven days appears to be a slightly miscalculated reference back to April 19 (ninety-five days earlier), which was the day the chaplain approved his kosher diet request.

¶¶ 7, 8. ODOC also submitted an affidavit from Cheri McCleave-Redpath, who is a manager for the medical ARA. She stated that the medical ARA had not received a grievance appeal from Chance as to any medical issue, including "a specific medical diet." *Id.* at 19, ¶ 5. Thus, Chance had "not exhausted his administrative remedy . . . with respect to any medical issues." *Id.* ¶ 7.

The district court said nothing about this apparent conflict. But it relied on Knutson's affidavit (without mentioning McCleave-Redpath's) to find that the "Administrative Review Authority agrees [Chance's medical-diet] claim was exhausted." R. vol. IV at 58 n.2. The district court then ruled against Chance on the merits.

### 3.    Defendants' Argument that Chance Did Not Exhaust Any Claim

As noted, defendants argue on appeal that Chance failed to exhaust all his claims, which would necessarily include his medical-diet claim. If so, this could be reason to affirm the district court's disposition without reaching the merits. But defendants do not frame this as an alternate argument for affirmance. They appear to believe, rather, that the district court found lack of exhaustion on all claims. *See* Aplee. Resp. Br. at 17 ("The District Court properly found that Appellant failed to exhaust and, therefore . . . granted summary judgment."). Even more oddly, defendants support their argument that Chance "failed to exhaust his administrative remedies as to any claim" by citing the McCleave-Redpath affidavit *and* the Knutson affidavit, as if they say the same thing. *Id.*

11

We choose not to take up defendants' argument, even if intended as an alternate basis on which to affirm.  True, "[w]e may affirm on any ground adequately presented to the district court," *Griffith v. Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1328 (10th Cir. 1994), and we recognize that defendants argued complete failure of exhaustion to the district court (including by citing the two affidavits, as if they support each other, *see* R. vol. III at 235).  But this argument fails on the "adequately" part of "adequately presented."

We simply do not know what to make of this situation: two state prison employees giving the district court diametrically opposed opinions about whether a prisoner exhausted his claim.  We also cannot say, on this record, that Chance could only properly exhaust his medical-diet claim through the medical ARA.  McLeave-Redpath only tells us that the claim was *not* exhausted through the medical ARA.  She does not say it *had to be* exhausted through the medical ARA.  Knutson does not say that either, and he would be the person we would expect to say so, if it were true (*e.g.*, "This claim could not be exhausted through the general ARA; Chance needed to send it to the medical ARA.").

Moreover, we do not deem it obvious that any grievance touching on a medically needed diet must go to the medical ARA.  Chance's grievance paperwork shows he was not asking to be prescribed a medical diet.  He was asking that prison food services provide him a medical diet that (he believed) he had already been prescribed.  We cannot say that Oklahoma's prisoner grievance policy

12

unquestionably requires such a grievance—primarily directed at food services personnel, not medical personnel—to be exhausted through the medical ARA.

In short, because defendants failed to develop the record, we will not further consider the possibility of affirming the district court's disposition of the medical-diet claim on the alternate basis that Chance failed to exhaust that claim.

4. Merits Analysis

We now ask whether the district court properly granted summary judgment to Phillips and Roberts on this claim, and properly dismissed for failure to state a claim against McCoy.

The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prisoner claiming a violation of this requirement must show: (i) "the deprivation alleged [is], objectively, sufficiently serious"; and (ii) the responsible official acted with "deliberate indifference to inmate health or safety." *Id.* at 834 (internal quotation marks omitted). Deliberate indifference means "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The district court found that Chance satisfied the first element (an objectively sufficiently serious deprivation, *i.e.*, starvation) but he failed to show a genuine dispute of material fact about deliberate indifference. The court explained, "While

13

there was a delay in Plaintiff's receiving his medical diet, there is no evidence of interference with the medical diet or that the delay was intentional." R. vol. IV at 62.

Chance disputes this reasoning. He claims it is "not even remotely plausible" that the prison "did not have any food that [he] could eat or no way of remedying this issue for this extremely long period of time." Aplt. Opening Br. at 19. In this light, the question is if the record before the district court raised a genuine issue whether Phillips or Roberts, or both, were deliberately indifferent to Chance's lack of food, and whether he plausibly pleaded McCoy's liability in her role as warden. We will discuss each defendant separately, beginning with Roberts. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

a.     *Roberts*

As relevant to this claim, the only evidence Chance submitted about Roberts was the May 24 RTS, where he asked, "Can you give me my Mediteranion [sic] diet or something equivalent to that for my dietary needs[?]" R. vol. II at 449. There is no hint here that Chance did not have enough to eat. Thus, Chance failed to raise a genuine dispute about whether Roberts "kn[ew] of and disregard[ed] an excessive risk to [Chance's] health or safety." *Farmer*, 511 U.S. at 837. We therefore affirm the district court's grant of summary judgment in Roberts's favor on this claim.

b.    *Phillips*

Chance's May 7 RTS to Phillips stated that a kosher diet was a medical need, not just a religious request.  In that light, Chance asked, in essence, if there was some way the typical sixty-day lag to start receiving kosher meals could be shortened.  Then, in his June 3 RTS to Phillips, Chance repeated that his need for a kosher diet was medical, not just religious, and he added, "I can not buy my own food.  I have been washing people's stuff so I can have something to eat on most night[s]."  R. vol. II at 82.  Phillips waited until July 12 to respond to both RTS's, and then her response was, "No response."  *Id.* at 79, 81.  Finally, viewing the evidence in the light most favorable to Chance, he started receiving kosher meals on July 23.[9]

This evidence is enough to raise a genuine issue that Phillips knew Chance was not receiving enough food for reasons beyond his control.  Moreover, Phillips has never argued that she lacked power to do anything about the situation.  She instead emphasizes a part of the record showing that Chance received supplemental snacks.

The issue of snacks refers to documents in the *Martinez* report showing that prison medical personnel had authorized Chance to receive one snack daily beginning in June 2018 at the latest, increased to two snacks daily beginning on July 10, 2019 (shortly before he began receiving kosher meals).  The district court recognized there

---

[9] Our analysis of Phillips's potential culpability does not turn on whether Chance started receiving kosher meals on July 23, as Chance claims, or on July 16, as reported in McCoy's response to Chance's grievance.

was a genuine dispute over the purpose of these snacks because Chance claimed they had been authorized before his GERD diagnosis, on account of the large amount of medication he takes.

Because the record supports Chance's explanation, the court must accept it for summary judgment purposes. Thus, the court must assume that Chance received snacks for reasons other than difficulty in obtaining a kosher diet. Notably, defendants offer no evidence that Phillips knew Chance was receiving snacks.

It is still conceivable that Chance's snacks were enough to keep him adequately fed, but Phillips does not argue as much and Chance's contemporaneous RTS's say he was not receiving enough food. Moreover, any argument that Chance happened to be receiving enough food from other sources would be an attack on the district court's finding that Chance's need was "sufficiently serious and meets the objective component of the deliberate indifference standard." R. vol. IV at 62. Phillips could have made this argument as an alternative basis to affirm, but if she intended to, she has not supported it. Our own review of the record has not turned up any support either (*i.e.*, evidence from which a reasonable jury could only conclude that the minimal amount Chance could eat from the regular prison menu, plus his supplemental snacks, was enough to feed him properly). Accordingly, on this record, the court must assume that Chance's snacks were not prescribed to make up for his limited ability to eat from the general prison menu, and, in any event, were not enough to make up the shortfall.

16

Phillips further argues that there was no evidence Chance had been prescribed a Mediterranean diet or a kosher diet. We need not decide if we agree with Phillips's view of the evidence because Phillips has not explained to us why a formal prescription would matter, at least when an inmate complains he cannot eat the food served on the regular menu and has therefore been scrounging for food on his own. Again, Phillips has not argued that she was powerless to act.

In sum, the record before the district court contained enough evidence to reasonably infer that Phillips was deliberately indifferent to Chance's lack of adequate food. But that does not end the inquiry. Phillips also asserted (and continues to assert) qualified immunity. This means Chance has the burden to "demonstrate on the facts alleged both that [1] the defendant violated his constitutional or statutory rights, and that [2] the right was clearly established at the time of the alleged unlawful activity." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

Chance's allegations, if accepted by a factfinder, would be enough to show that Phillips violated his Eighth Amendment right to adequate food in prison. The question is whether the right was clearly established. "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003). Usually, the relevant precedent "must be particularized to the facts." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). But "general

17

precedents may clearly establish the law when the defendant's conduct obviously violates the law. Thus, a right is clearly established when a precedent involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Id.* (internal quotation marks, brackets, and citation omitted; emphasis removed).

Chance cites only general precedents about prison officials' duty to adequately feed prisoners (such as *Farmer*'s declaration that inmates must receive "adequate food, clothing, shelter, and medical care," 511 U.S. at 832), and he relies on the idea of obviousness. In this circumstance, we are persuaded that he has fulfilled his burden to show the right was clearly established. The general duty to feed prisoners applies with obvious clarity when a prisoner complains he is not getting enough food because his medical condition prevents him from eating almost everything on the general prison menu. *See, e.g.*, *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) ("A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment."). Put slightly differently, as between allowing the prisoner to starve and finding medically suitable food, we do not see how prison officials would have any room for doubt about their obligation. Thus, on the limited record before the district court (*i.e.*, the parties' pre-discovery filings, plus the *Martinez* report), the district court incorrectly granted summary judgment in Phillips's favor on Chance's medical-diet claim.

18

c.      *McCoy*[10]

Through his grievance filed on June 21, 2019, Chance informed McCoy, "I have had very little to eat for several months. . . . I have had to find my own food." R. vol. II at 84. The grievance also listed the employees from whom Chance had sought relief, including Phillips. Chance pleaded that McCoy, in her role as warden, had a duty to act when she received this information (no later than June 25). But she did not address his grievance until August 1.

"Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). As relevant here, Chance must show: (1) "the supervisor's subordinates violated the constitution"; and (2) "the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.*

Chance satisfies the first element because we have concluded that his allegations, if accepted, would be enough to demonstrate Phillips violated his Eighth Amendment right to an adequate amount of food. As to the second element, we hold

---

[10] As against McCoy, the district court dismissed Chance's medical-diet claim under Rule 12(b)(6), so the question before us is whether Chance's complaint "contain[ed] sufficient factual matter, accepted as true, to state a claim to relief [against McCoy] that is plausible on its face," *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). For these purposes, the documents Chance attached to his complaint are treated as part of the complaint. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

that Chance likewise has plausibly pleaded McCoy's acquiescence to Phillips's inaction, given that McCoy waited over a month to respond.

As for qualified immunity, this strikes us as another instance of "obvious clarity," *Apodaca*, 864 F.3d at 1076 (internal quotation marks omitted; emphasis removed), such that general precedents are enough to clearly establish the right. We cannot see how a warden who learns that her subordinates are depriving an inmate of adequate food could have any doubt about the need to take action. Indeed, this circuit declared in 1976 that a supervisor may be held liable for acquiescing to a subordinate's constitutional violation. *See Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976).

For these reasons, Chance stated a plausible claim to relief. The district court therefore incorrectly dismissed Chance's medical diet claim against McCoy.

### B.    Charging for Medicine

Chance pleaded that, for at least four years, prison officials wrongly charged his inmate account for the cost of medicine prescribed to him, allegedly in violation of prison policy. Chance characterized this as an equal protection violation. Chance seems to have directed this claim at McCoy and perhaps Atkinson (who responded to medical grievance appeals on behalf of ODOC).

The district court denied relief on the merits of this claim without discussing whether Chance had exhausted it administratively. Then, after discussing a different claim, the court returned to this claim and ruled that Chance had not exhausted it.

Because we agree the claim fails on the merits, we will not decide whether Chance properly exhausted it.[11]

The district court characterized Chance's equal protection claim as a "class of one" claim, and Chance does not dispute that. Such a claim requires the plaintiff to demonstrate (1) "other similarly situated individuals were treated differently," and (2) "there is no rational basis for the different treatment." *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1167 (10th Cir. 2016) (internal quotation marks and brackets omitted). "The requirement that a plaintiff show that similarly situated persons were treated differently is especially important in class-of-one cases." *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1212 (10th Cir. 2006) (internal quotation marks omitted). "Accordingly, courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases." *Id.* at 1213.

In his summary judgment briefing, Chance said his differential treatment should be obvious by comparing his circumstances to the prison policies and procedures that allegedly apply. But the question is not whether the prison failed to follow its policies and procedures as to him. The question is whether it failed to follow those policies and procedures *only* as to him. Chance did not offer any relevant argument here, nor did he make a request that the district court defer summary judgment so Chance could pursue discovery on this claim. *See* Fed. R. Civ.

---

[11] We therefore do not reach Chance's argument that Atkinson interfered with his ability to exhaust this claim when she issued him a warning for misuse of the grievance process.

P. 56(d).[12]  Accordingly, we affirm the district court's grant of summary judgment on

this claim.[13]

### C.    Other Medical Claims

Chance pleaded that he did not receive adequate medical care for shoulder pain

and lymphedema.  The district court ruled that Chance failed to exhaust his

administrative remedies as to these claims.

Chance's appellate brief does not mention his claim based on shoulder pain, so

we deem him to have abandoned it.  Chance's only mention of lymphedema is a

reference to being "hospitalized for serious illness that was not properly treated."

Aplt. Opening Br. at 27 (citing a motion filed with this court in April 2022, in which

he requested an injunction requiring defendants to treat his lymphedema).  But

Chance raises this issue only to argue that the district court erred when it denied him

injunctive relief.  Chance does not explain why the district court's exhaustion

analysis was wrong.  *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366

(10th Cir. 2015) ("The first task of an appellant is to explain to us why the district

court's decision was wrong.  Recitation of a tale of apparent injustice may assist in

that task, but it cannot substitute for legal argument.").  Thus, we deem Chance to

---

[12] Chance argued that discovery would prove lack of proper treatment for many medical issues.  *See* R. vol. III at 334.  But assuming this was a proper Rule 56(d) request, it is not relevant to the question of differential treatment.

[13] Given this disposition, we need not decide whether Chance adequately pleaded McCoy's or Atkinson's personal participation in the alleged constitutional violation.

have abandoned his lymphedema claim as well.  We therefore affirm the district court's grant of summary judgment on these claims.[14]

## D.    Interference with Legal Mail

For the first time on appeal, Chance alleges that his constitutional right of access to the courts was interfered with because his legal mail was tampered with or confiscated.  He does not specify which of the defendants, if any, was responsible.  Regardless, Chance cannot plead a new cause of action for the first time in this court.  *See, e.g.*, *Petrini v. Howard*, 918 F.2d 1482, 1483 n.4 (10th Cir. 1990) ("A federal appellate court, as a general rule, will not reverse a judgment on the basis of issues not presented below.").  So we will not further address this claim.

## E.    Procedural Rulings

Finally, we address Chance's challenges to a number of procedural rulings.

### 1.    Denial of Chance's Motion for Appointment of Counsel

While defendants' MTD/MSJ was pending, Chance moved for appointment of counsel.  The district court denied that motion because Chance showed he could present his claims himself, and the legal issues were not complex.  Chance argues this was error.

"There is no constitutional right to appointed counsel in a civil case," *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989), but "[t]he court may request an

---

[14] We will not reach Chance's arguments about injunctive relief because the issue is moot.  As noted, Chance was discharged from prison in July 2022, so the district court cannot now enjoin defendants to meet his medical needs.  *See* *Wirsching*, 360 F.3d at 1196.

attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1).

"[T]he factors to be considered in deciding whether to appoint counsel[] includ[e] the

merits of the litigant's claims, the nature of the factual issues raised in the claims, the

litigant's ability to present his claims, and the complexity of the legal issues raised by

the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (internal

quotation marks omitted). "We review the denial of appointment of counsel in a civil

case for an abuse of discretion," *id.*, although abuse of discretion in this context is

even more deferential than usual: "Only in those extreme cases where the lack of

counsel results in fundamental unfairness will the district court's decision be

overturned," *McCarthy v. Weinberg*, 753 F.2d 836, 839 (10th Cir. 1985).

The district court's ruling did not result in fundamental unfairness, nor do we

see an abuse of discretion in any event. We therefore reject Chance's challenge to

the district court's ruling denying his motion for appointment of counsel.[15]

### 2. Alleged Delay in Processing Chance's Motion for Judgment on the Pleadings, Resulting in its Denial

Chance claims the U.S. Marshals served his complaint on defendants in mid-

January 2021 and defendants' time to answer expired a few weeks later. So he

mailed a motion for judgment on the pleadings (which was, in substance, something

like a motion for default judgment) on February 26, 2021, but the district court did

not file it until May 20, 2021. In between those dates, defendants prepared and filed

---

[15] We do not mean to foreclose the possibility of appointing counsel on remand, if appropriate.

the *Martinez* report, and filed the MTD/MSJ (on May 11). Because defendants had filed their motion by the time Chance's motion for judgment on the pleadings was docketed, the district court denied Chance's motion, apparently as moot.

Chance seems to argue that the alleged delay robbed him of a chance to win his case early, or at least to have his version of the facts deemed undisputed. But whatever argument he means to present, the record does not support his claim that he prepared and mailed his motion in February 2021. The law library supervisor, who claims to have deposited the motion in the mail, says that he or she did so on May 17, 2021. *See* R. vol. III at 307. And in the motion itself, Chance claims he had not received a copy of the *Martinez* report "as of May 17th, 2021." *Id.* at 303.

Because the record contradicts Chance's claim of a two-month delay between the motion's mailing and its filing, the court need not consider relief a party might be entitled to in the alleged circumstances, if any.

### 3.    Denial of Chance's Motion to Supplement His Exhibits

A week after filing his response to the MTD/MSJ, Chance moved to supplement his exhibits with a medical services request and an RTS complaining about a recent policy change. Previously, the prison delivered his food directly to his cell. After the policy change, however, he needed specific medical authorization for such treatment (which he had apparently never received). Chance did not explain the relevance of these documents.

The district court denied Chance's motion because, in its opinion, the documents did not relate to Chance's existing claims (as opposed to a potential new

claim about the policy change). In this appeal, Chance argues that the documents would have shown "a continuance of wrongs and further retaliatory acts." Aplt. Opening Br. at 28. We review for abuse of discretion. *See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir. 1997) (noting that a district court's decision to admit or exclude evidence at summary judgment is reviewed for abuse of discretion, "[l]ike other evidentiary rulings").

As noted, Chance never explained to the district court the relevance of the supplemental exhibits. Even if he had, the district court was well within its discretion to conclude that the documents were not relevant to the issues raised in the MTD/MSJ. We therefore reject Chance's argument.

## IV.    CONCLUSION

We reverse the district court's grant of summary judgment to Phillips, and its dismissal of McCoy, on Chance's medical-diet claim. As to all other issues, we affirm. We remand for further proceedings consistent with this opinion.[16]

Entered for the Court


Allison H. Eid
Circuit Judge

---

[16] This disposition does not foreclose the possibility that Phillips or McCoy, or both, may be entitled to summary judgment at the conclusion of discovery.