FILED
**United States Court of Appeals
Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 28, 2024**

**Christopher M. Wolpert
Clerk of Court**

_____

MARTA SANCHEZ; THE ESTATE OF
STEPHANIE LOPEZ; DOMINIC
MARTINEZ,

     Plaintiffs - Appellants,

v.

ANTHONY GUZMAN, individually;
LUKE MCGRATH, individually; JOSEPH
CARNS, individually; BRIAN
MARTINEZ, individually,

    Defendants - Appellees.

No. 22-1322

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:19-CV-01871-RMR-MEH)**

_____

Robert E. Barnes, Barnes Law, Los Angeles, California, for Plaintiffs-Appellants.

Jonathan N. Eddy, SGR, LLC, Denver, Colorado (Eric M. Ziporin, SGR, LLC, Denver,
Colorado, and Josh A. Marks and David J. Goldfarb, Berg Hill Greenleaf Ruscitti LLP,
Boulder, Colorado, with him on the brief), for Defendants-Appellees.

_____

Before **HOLMES**, Chief Judge, **McHUGH**, and **CARSON**, Circuit Judges.

_____

**HOLMES**, Chief Judge.

_____

Plaintiffs Marta Sanchez, the Estate of Stephanie Lopez, and Dominic Martinez brought a § 1983 excessive-force action against Littleton, Colorado Police Department Officers Anthony Guzman, Luke McGrath, and Joseph Carns, as well as Englewood Police Department Officer Brian Martinez (collectively, "Defendants"). The district court granted summary judgment to Defendants on the basis that they were entitled to qualified immunity.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm**.

**I**

The parties' arguments reveal starkly different pictures of the factual circumstances that form the basis of this action.

On one hand, Plaintiffs describe an incident in which Defendants fired sixty-six bullets into Plaintiffs' motionless vehicle while they were attempting to surrender and presenting no observable threat—actions that killed Stephanie Lopez, rendered Marta Sanchez a paraplegic, and severely injured Dominic Martinez.

On the other hand, Defendants describe a multifaceted police pursuit and shooting whereby Plaintiffs—after fleeing the scene of an armed carjacking in a stolen vehicle—led police on a high-speed car chase, fleeing after each of Defendants' three attempts to stop Plaintiffs' vehicle. And, according to Defendants, Plaintiffs used their vehicle as a weapon against Defendants and, more generally, endangered the public through their use of the vehicle.

Though we acknowledge the different perspectives of the parties, in our review of the district court's qualified-immunity summary-judgment order, we are obliged to

2

accept Plaintiffs' version of the facts; yet, critically, that is true only insofar as that version is supported by record evidence. *See, e.g.*, *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) ("[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record . . . ."). Ordinarily, the plaintiff's version of the facts provides the foundation for our qualified-immunity legal analysis. *See, e.g.*, *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023) (noting that, in the qualified-immunity summary-judgment context, construing the facts in the plaintiff's favor "generally means adopting the plaintiff's version of the facts"). Considering the plaintiff's record-based facts, ordinarily we would determine whether the plaintiff has satisfied its burden of proof—and thus defeated the defendant's qualified-immunity defense— by showing (1) that the defendant violated the plaintiff's constitutional rights and (2) that the violation contravened clearly established law. *See, e.g.*, *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016) (noting that we look to the plaintiff's version of the facts "in determining whether the plaintiff has satisfied the necessary two-pronged qualified-immunity showing").

However, under the unique circumstances of this case, we are unable to make that qualified-immunity determination because Plaintiffs have failed to identify the record evidence that supports the version of the facts that they have pleaded and argued in their briefing. In other words, Plaintiffs have failed to supply the factual foundation for our qualified-immunity legal analysis. As a necessary consequence, Plaintiffs have effectively waived our review of their challenge to the district court's

3

grant of qualified immunity to Defendants.  More specifically, this is so because Plaintiffs' failure to define the operative factual universe—with citations to supportive record evidence—prevents us from assessing whether Plaintiffs have carried their two-part qualified-immunity burden.  In particular, absent Plaintiffs identifying for us a record-based factual universe reflecting their version of events, we cannot opine on whether the district court committed reversible error in concluding that Plaintiffs did not satisfy the clearly established law prong of the qualified-immunity test.

The assessment of whether a plaintiff has satisfied that prong—as well as the first prong of the qualified-immunity test (constitutional violation *vel non*)—turns on the nature of the record-based factual universe that a plaintiff has defined.  But here Plaintiffs have failed to define such a universe.  Therefore, they have effectively waived our review of their qualified-immunity challenge.  Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we are constrained on this basis to uphold the district court's judgment.

## II

On February 4, 2022, Defendants moved for summary judgment on the basis that they were entitled to qualified immunity.  The district court referred the motions to a magistrate judge.  The magistrate judge recommended granting the motions for summary judgment on the basis of qualified immunity.  *See* Aplts.' App. at 47 (Mag. Judge's R. & R. on Defs.' Mots. for Summ. J., filed July 29, 2022) ("Recommendation").  Specifically, the magistrate judge concluded that Plaintiffs

had failed to carry their burden on the clearly established law issue, and recommended that the district court grant Defendants' motions for summary judgment on the ground of qualified immunity.

Plaintiffs filed objections to the magistrate judge's Recommendation. In large part, Plaintiffs' objections related to the magistrate judge's treatment of the facts. They argued that the Recommendation "ignored or marginalized" Plaintiffs' version of the facts—including their sworn testimony—thus not taking the facts, as the judge should, in the light most favorable to the plaintiffs. *Id.* at 80 (Pls.' Objs. to Mag. Judge's R. & R. on Defs.' Mots. for Summ. J., filed Aug. 12, 2022). Specifically, Plaintiffs said that "the Recommendation's analysis regarding the second prong of qualified immunity is undermined by improper deference to the Defendants' proposed facts, while disregarding contradictory video evidence, weighing the Plaintiffs' credibility against them, and disregarding the defendants' sworn testimony when it conflicts with the Magistrate's opinion of the video evidence." *Id.* at 88. They said that the judge's approach was erroneous because the "question of qualified immunity demands clearly reasonable inferences in the plaintiffs' favor. Instead, the Recommendation systematically eliminated all disputes of material fact, finding each in favor of the Defendants without any inferences provided to the Plaintiffs, and concluded that no analysis of the constitutional rights at issue was necessary." *Id.* (citation omitted).

The district court nevertheless issued an order adopting the magistrate judge's Recommendation. Significantly, despite Plaintiffs' vigorous objections, the district

5

court fully adopted the Recommendation's factual statement.  In anticipation of

tackling the legal questions that Plaintiffs raised, the district court offered a summary

of the magistrate judge's factual findings.  It bears repeating here:

> On the evening of June 29, 2017, Defendant Officers Anthony Guzman, Joseph Allen Carns, and Luke McGrath were on duty with the Littleton Police Department.  Just before midnight, they received a dispatch report that a white Chevy Malibu had been carjacked by four individuals.  One of the suspects was armed and had fired a shot near the victim's head, according to the dispatch report.  This constituted felony auto theft in violation of Colorado Revised Statute § 18-4-409.  The officers responded to the report in full police uniform, each driving a fully marked police SUV.  They observed the suspect Malibu driving northbound on Santa Fe Drive.  There were three suspects in the vehicle at that time: Plaintiffs Marta Sanchez and Dominic Martinez, as well as decedent Stephanie Lopez, whose Estate proceeds as the third Plaintiff in this action.  The officers began to follow the Malibu with lights and sirens activated, but the suspects did not yield.
>
> Plaintiff Martinez estimated that the Malibu was driving "at least" seventy-five miles per hour.  The suspects ran red lights at Oxford Avenue and Dartmouth Avenue and began to weave between lanes.  Officer Carns observed the suspects narrowly avoid colliding with a motorcycle, but Plaintiff Sanchez testified that she did not recall almost hitting a motorcycle.  Officer Carns requested and was authorized to perform a Pursuit Intervention Technique ("PIT") maneuver once speeds decreased, in order to stop the Malibu.  Eventually, the Malibu appeared to skid and decelerate, and at that time, Officer Carns performed the authorized PIT maneuver.  The Malibu spun roughly 170 degrees and came to rest.  This was the first of three "stops" that took place during this pursuit, all of which were captured on video that has been submitted to the Court.  Officer Brian Martinez of the Englewood Police Department joined the other Defendant officers at the third stop, in response to their dispatch call for assistance.
>
> In total, the pursuit of the suspects in the Malibu covered more than six miles and spanned three jurisdictions, including Littleton, Englewood, and Denver.  Plaintiff Sanchez, who was the driver, was shot multiple times.  Plaintiff Lopez, who was in the

front passenger seat, was fatally shot.  Plaintiff Martinez, who was in the back seat, jumped out of the moving vehicle at some point during the chase between the first and second stops, unbeknownst to the officers, and had no further involvement.  He alleges that he does not know whether he was hit but had previously told investigators that he had not been shot during the entirety of the events.

*Id.* at 206–207 (Dist. Ct. Order on Defs.' Mots. for Summ. J., filed Aug. 30, 2022) (citation omitted).

The district court recognized that "Plaintiffs argue that there are disputes of fact as to what took place at each of the three stops, including the circumstances under which the various officers exerted force and fired their weapons at Plaintiffs during those stops, that preclude summary judgment." *Id.* at 207.  Nevertheless, the district court concluded that "Plaintiffs have failed to satisfy the 'clearly established' prong of the qualified immunity analysis" and that certain "disputes of fact are not material to the motions for summary judgment at issue." *Id.* at 208.

More specifically, as relevant to our disposition here, the court reasoned:

Upon *de novo* review of the motions for summary judgment and the record evidence, including the video evidence of the events of that evening, the Court is skeptical whether, absent the qualified immunity issues discussed herein, there would remain no disputes of fact that would be suitable for a jury—particularly regarding the circumstances under which various officers discharged their weapons; whether, at those times, Plaintiffs were attempting to surrender and had brought the Malibu to a full stop; and whether and in what direction(s) the Malibu was moving at those times. However, even if the Court were to find in favor of Plaintiffs and conclude that these disputes of fact raised material issues as to whether the officers' conduct was unconstitutional, this would not be sufficient to defeat summary judgment because Plaintiffs have not borne their burden on the second prong of the qualified immunity analysis[.]

7

*Id.* at 226. In other words, the court determined that, even assuming that the potential disputes of fact that it identified were resolved in Plaintiffs' favor—such that there were triable factual issues bearing on the alleged unconstitutionality of Defendants' conduct—Plaintiffs would nonetheless not succeed because they could not carry their burden of establishing that Defendants violated clearly established constitutional law.

## III

We review a district court's grant of summary judgment based on qualified immunity de novo. *See Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 756 (10th Cir. 2021). "'The doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Est. of Smart ex rel. Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "When a § 1983 defendant asserts qualified immunity, this affirmative defense 'creates a presumption that [the defendant is] immune from suit.'" *Id.* (alteration in original) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)). "'To overcome this presumption,' the plaintiffs bear the burden of 'show[ing] that (1) the officers' alleged conduct violated a constitutional right, and (2) [that right] was clearly established at the time of the violation, such that "every reasonable official would have understood," that such conduct constituted a violation of that right.'" *Id.* (alterations in original) (quoting *Perea*, 817 F.3d at 1202).

8

This case concerns the second prong—that is, the clearly established law prong. "Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent *particularized to the case* at issue exists." *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022) (emphasis added) (citing *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017)). "*Materially similar facts* can make the precedent sufficiently particularized." *Id.* (emphasis added). "Thus, a right is clearly established when our precedent encompasses '"materially similar conduct" or applies "with obvious clarity"[1] to the conduct at issue.'" *Id.* (quoting *Apodaca*, 864 F.3d at 1076). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at

---

[1]    In the Recommendation, the magistrate judge acknowledged Plaintiffs' attempt to "draw the Court's attention to the 'sliding scale' [approach to clearly established law] of the Tenth Circuit." Aplts.' App. at 65. But the magistrate judge noted that "the Supreme Court has [recently] limited the application of such an approach." *Id.* at 66. We observe in this regard that, although the language of the "sliding scale" still exists in our precedent, our recent cases have moved away from that rubric—questioning its viability. *See Shepherd*, 55 F.4th at 818 n.5 ("Plaintiff argues the 'sliding scale' approach should apply to show that the unlawfulness of Defendant's conduct was apparent. Our more recent jurisprudence has shifted to consider 'obvious clarity' or 'flagrantly unlawful conduct' rather than engage in the sliding scale approach." (first citing *Lowe v. Raemisch*, 864 F.3d 1205, 1210–11 & 1211 n.10 (10th Cir. 2017); and then citing *Contreras v. Doña Ana Cnty. Bd. of Cnty. Comm'rs*, 965 F.3d 1114, 1123 (10th Cir. 2020) (Carson, J., concurring))); *accord Reyes v. Fowlks*, No. 22-4028, 2023 WL 4486155, at *3 (10th Cir. July 12, 2023) (unpublished); *see also Luchetti v. N.M. State Pers. Bd.*, No. 21-2109, 2022 WL 2678826, at *4 (10th Cir. July 12, 2022) (unpublished) ("Our more recent jurisprudence [] has observed that the 'sliding scale' approach 'may arguably conflict with recent Supreme Court precedent on qualified immunity.'" (quoting *Lowe*, 864 F.3d at 1211 n.10)). As we do here with *Reyes* and *Luchetti*, we cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

12 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "To be clear, we do not require plaintiffs to engage in a scavenger hunt for a prior case with identical facts." *Shepherd*, 55 F.4th at 815 (citing *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)). "We ask whether the existing law provides fair warning to a defendant." *Id.* (citing *Est. of Smart*, 951 F.3d at 1168).

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citing *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 n.3 (2015)). "The Court has found this necessary . . . to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *Id.* (quoting *al–Kidd*, 563 U.S. at 742). "'[G]eneral statements of the law are not inherently *incapable* of giving fair and clear warning' to officers, . . . but 'in the light of pre-existing law the unlawfulness must be apparent[.]'" *Id.* at 79–80 (emphasis added) (first quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997); and then quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Accordingly, the Supreme Court has held that *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Graham v. Connor*, 490 U.S. 386 (1989)—the Court's seminal cases on Fourth Amendment seizures and excessive force—"do not by themselves create clearly established law outside 'an obvious case.'" *Id.* at 80 (first quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam); and then citing *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

10

The specificity of clearly established law is "especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix*, 577 U.S. at 12 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). "It is with reluctance that we second-guess the split-second decisions of trained officers reacting to difficult situations in the line of duty. We are not well-suited to act as a police supervisory board, making finely calibrated determinations of just what type of misbehavior justifies just what level of response." *Cordova v. Aragon*, 569 F.3d 1183, 1190 (10th Cir. 2009).

## IV

Plaintiffs raise two arguments on appeal that bear on our disposition of this action.[2] We consider them both and reject them.

---

[2] Plaintiffs also argue that the district court erred in its clearly established law analysis by placing an "effectively insurmountable" burden on them. Aplts.' Opening Br. at 6. Specifically, Plaintiffs allege that the district court improperly concluded that "qualified immunity defeated all claims [on the second, clearly established law prong] unless [they] produced precedent from analogous types of cases with directly analogous facts demonstrating the Constitutional rights alleged to be violated." *Id.* Because we conclude, at the threshold, that Plaintiffs have failed to provide us with a record-based factual version of events upon which to conduct a clearly established law analysis on appeal, any error by the district court in placing too high of a clearly established law burden on Plaintiffs must be deemed harmless. By failing to establish a record-based factual foundation for our clearly established law analysis, Plaintiffs have effectively given up the opportunity to demonstrate that any error in the particulars of the district court's clearly established law analysis harmed them. That is because Plaintiffs cannot show us without such a record-based factual universe that there actually is any particularized controlling law that

First, Plaintiffs argue that the district court erred by placing the burden on them to overcome Defendants' assertion of qualified immunity. This argument crumbles under the weight of our extensive body of caselaw that places the burden on the plaintiffs in the qualified-immunity context. And second, Plaintiffs argue that the district court erred in concluding that Defendants were entitled to qualified immunity because Plaintiffs failed to show that Defendants violated clearly established law. We conclude that Plaintiffs have effectively waived our review of this argument by failing to define a factual universe that is supported by record evidence upon which we can perform the requisite legal analysis. We cannot opine on whether the district court committed reversible error in concluding that Plaintiffs did not satisfy the clearly established law prong of the qualified-immunity test without a universe of record-based facts against which to conduct a particularized assessment of the state of the law existing at the time of these events. Because they failed to supply us with this universe of record-based facts, Plaintiffs have effectively waived our review and we must uphold the district court's qualified-immunity determination—in particular, its ruling regarding clearly established law.

**A**

As to Plaintiffs' first contention that the district court erred by placing the burden on them to overcome Defendants' assertion of qualified immunity, we need

---

demonstrates the unconstitutionality of Defendants' conduct. And, by necessary extension, they therefore cannot show us that the district court reached the wrong outcome on the clearly established law question.

not linger long: they are flat out wrong.  Cases in this circuit are legion that place the burden on the plaintiffs to negate a qualified-immunity defense.  *See, e.g.*, *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion.  The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236–37 (2009))); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (noting that it is "well-settled" that "[t]he *plaintiff* bears the burden of citing to us what he thinks constitutes clearly established law." (quoting *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010))); *accord Cox v. Glanz*, 800 F.3d 1231, 1245–46 (10th Cir. 2015); *Est. of Taylor*, 16 F.4th at 757.[3]  Therefore, the district court did not err in placing the burden on Plaintiffs to defeat Defendants' assertion of qualified immunity—more specifically, to show that Defendants' conduct violated clearly established law.

---

[3]    We recognize that some circuits interpret the relevant Supreme Court precedent on this issue differently.  *Compare McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023) (placing the burden on *plaintiffs* to overcome a qualified immunity defense once asserted, as we do), *with Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) ("'[T]he party asserting the affirmative defense of qualified immunity' bears the burden of persuasion on both prongs at summary judgment." (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014))).  But we have consistently read the Supreme Court's decision in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), as only placing the burden on government officials to assert a qualified immunity defense; after that, the burden of proof shifts to the plaintiffs to show that the officials are not entitled to qualified immunity.  *See, e.g.*, *Cox*, 800 F.3d at 1245–46.  Accordingly, Plaintiffs' contrary argument here borders on the frivolous.

**B**

Our consideration of Plaintiffs' second argument reveals the fatal flaw in their appellate challenge: they have not given us an adequate factual foundation to assess whether the district court erred in determining that they failed to carry their burden on the clearly established law question. As we see things, we have no occasion to assay the caselaw that Plaintiff identifies as clearly established law. That is because Plaintiffs showing of clearly established law fails at the threshold: that is, they have failed to define a factual universe grounded in record evidence that could form the foundation for our particularized inquiry into existing clearly established law.

The magistrate judge's Recommendation—and by extension the district court's order—rested on extensive factual findings,[4] which paint a menacing picture of Plaintiffs' conduct that would at the very least supply the Defendants with a solid

---

[4] The magistrate judge purported to rest his extensive findings on undisputed facts and the record evidence, construed in Plaintiffs' favor. In this regard, the judge stated:

> On the surface, the parties' briefings would seem to indicate that this case is rife with genuine issues of material fact. However, the evidence removes reasonable disputes as to the *material* facts. In particular, the video evidence of each of the three stops is particularly insightful into what happened on the night in question. When the video evidence contradicts the parties' versions of events, the Court adheres as closely as possible to the video evidence. . . . With that understanding, the following are the Court's findings of material facts that are relevant to the Court's analysis and either undisputed or supported by the record, when viewed in the light most favorable to Plaintiffs as the non-moving parties.

Aplts.' App. at 50 (citations omitted).

basis to argue cogently (if not dispositively) that their use of lethal force did not violate clearly established law. Indeed, in the "Statement of the Facts" section of their response brief—which spans approximately nine pages—Defendants portray Plaintiffs' conduct in a similarly threatening light and support their portrait with extensive citations to evidence in the record. *See* Aplees.' Resp. Br. at 3–13.

Yet under the governing law, it is Plaintiffs' version of the facts—insofar as it is supported by the summary-judgment record—that must frame the legal analysis, including the clearly established law inquiry. This appeal has presented Plaintiffs with a platform to explicate their record-based version of the facts. And importantly, even if we are willing to assume that in some circumstances this act of explication is simply a matter of best practices, that certainly is not true here: it is a legal obligation that Plaintiffs had to discharge, if they hoped to demonstrate that Defendants' conduct violated their clearly established rights. This is so where the district court adopted extensive factual findings that seemingly undercut their version of the facts.[5]

---

[5] This is not a situation where "the district court failed to set forth the facts it believed a reasonable jury could find with respect to the critical question[s] before us." *Lewis v. Tripp*, 604 F.3d 1221, 1226 (10th Cir. 2010). On the contrary, the district court fully adopted the Recommendation's factual statement, which contained extensive factual findings. Though when reviewing a *grant* of summary judgment in the qualified-immunity context, "we need not defer to the district court's performance of this [fact-finding] task," *Est. of Taylor*, 16 F.4th at 758 n.5—if Plaintiffs hope to prevail—it is incumbent on them to give us an alternative universe of record-based facts upon which to conduct our qualified-immunity analysis. It is not enough to assert in a conclusory fashion that the district court erred in its fact-finding mission by failing to construe the record in the light most favorable to them; instead, Plaintiffs must demonstrate the correctness of this assertion by offering us an alternative, record-based version of the facts that purportedly adheres more closely to their version of the events at issue.

And where, to make matters worse, Defendants have offered on appeal a detailed "Statement of the Facts," that likewise is at odds with Plaintiffs' contentions regarding the allegedly non-threatening nature of their conduct.

Far from discharging their legal obligation, however, Plaintiffs have failed to define in any meaningful manner a factual universe grounded in record evidence that could form the foundation for our inquiry into existing clearly established law. In other words, Plaintiffs have failed to present their record-based version of the events that bear on Defendants' use of force for our use in evaluating the merits of their legal challenge. Indeed, Plaintiffs did not even include a "Statement of Facts" section in their Opening Brief. Accordingly, we conclude that Plaintiffs have effectively waived our review of their appellate challenge to the district court's clearly established law ruling. And for that reason, we reject Plaintiffs' appellate challenge and uphold the district court's judgment.

As our discussion of the governing law *supra* should have made patent, the clearly established law inquiry is fact-intensive because it ordinarily focuses on determining whether there is caselaw with materially similar facts to the facts of the case before the court. *See, e.g.*, *Hemry v. Ross*, 62 F.4th 1248, 1256 (10th Cir. 2023) ("As with the force inquiry, our evaluation is fact-intensive, and in the qualified immunity context, we look for 'a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.'" (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018))); *accord Thomson*, 584 F.3d at 1312. And, in the summary-judgment context, the plaintiff is obliged to define the factual

16

universe by reference to record evidence. That is, the plaintiff has the burden of supporting her version of events, as reflected in the plaintiff's complaint and arguments, with record evidence. *See Thomson*, 584 F.3d at 1312; *accord Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). Absent this record-based picture of the case facts, there is no foundation for the court to conduct a clearly established law inquiry—that is, there are no facts grounded in the evidence against which the court can compare the facts of the caselaw that comprises clearly established law. Stated otherwise, the plaintiff is obliged to offer a record-supported version of the facts that would reveal the unlawfulness of the defendants' conduct— when those facts are viewed through the prism of clearly established law. Here, Plaintiffs have completely failed to fulfill this obligation.

In the course of their briefing on the clearly established law question, Plaintiffs cite to only two portions of the record. First, they cite to a section where the district court questioned whether there were disputes of fact that would raise triable factual issues bearing on the alleged unconstitutionality of Defendants' conduct but noted that, even if it were to resolve those disputes in Plaintiffs' favor, they would not prevail on the issue of clearly established law. Second, Plaintiffs seek—in a roundabout, indirect fashion—to rely on a portion of the record in which the district court, in resolving Defendants' motions to dismiss, accepted as true the facts of Plaintiffs' complaint. However, these citations are not enough to satisfy Plaintiffs' obligation to define a record-based factual universe that we may use in resolving the clearly established law question.

Regarding the first cited portion of the record, recall that in resolving the clearly established law question, the district court said the following:

> Upon *de novo* review of the motions for summary judgment and the record evidence, including the video evidence of the events of that evening, the Court is skeptical whether, absent the qualified immunity issues discussed herein, there would remain no disputes of fact that would be suitable for a jury—particularly regarding the circumstances under which various officers discharged their weapons; whether, at those times, Plaintiffs were attempting to surrender and had brought the Malibu to a full stop; and whether and in what direction(s) the Malibu was moving at those times. However, even if the Court were to find in favor of Plaintiffs and conclude that these disputes of fact raised material issues as to whether the officers' conduct was unconstitutional, this would not be sufficient to defeat summary judgment because Plaintiffs have not borne their burden on the second prong of the qualified immunity analysis[.]

Aplts.' App. at 226.

This passage could be liberally read—as Plaintiffs suggest—as indicating that the court probably believed that there were triable issues in certain factual areas and that it was prepared to assume that, if those issues were resolved in Plaintiffs' favor, they would indicate that Defendants' conduct was unconstitutional. *See* Aplts.' Opening Br. at 29 ("[E]ven the District Court in the Order of Dismissal appealed here[] conceded . . . that disputes of material facts precluding [Defendants'] summary judgment motions likely existed . . . ."). But the district court in this passage spoke in general terms—simply reciting certain factual areas in which there were probably disputed issues. The court did not articulate with any specificity a narrative— supported by citations to the record— that conformed (at least as Plaintiffs see it) to Plaintiffs' version of events. In effect, the court did the contrary, in that the court

18

adopted the magistrate judge's extensive factual findings, which closely resemble

Defendants' version of events. Putting aside our concerns about the district court's

approach in that regard,[6] its general statement that it was willing to assume certain

---

[6]    We do have concerns about the court's treatment of the facts in this case, but those concerns do not ultimately control the outcome here. To start, the district court acknowledged that it was "skeptical whether, absent the qualified immunity issues . . . , there would remain no disputes of fact that would be suitable for a jury"—specifically, disputes that would "raise[] material issues as to whether the officers' conduct was unconstitutional." Aplts.' App. at 226. In effect, the district court was expressing skepticism about whether the magistrate judge's extensive statement of facts was, in actuality, fully undisputed and favorable to Plaintiffs' record-based version of events—which Plaintiffs vigorously claimed it was not. That is, the district court was suggesting that if the magistrate judge actually had taken Plaintiffs' version into account, it likely would have given rise to the triable issues of fact of which the district court spoke. Yet rather than using its skepticism as a basis for rejecting portions of the magistrate judge's statement of undisputed facts—which the court seemingly decided was not fully reflective of facts that were undisputed and favorable to Plaintiffs' record-based version of events—the district court simply "incorporated" in full the magistrate judge's statement of facts. *Id.* at 206. Furthermore, though the court seemed to believe that it was likely that there were triable issues of fact bearing on the alleged unconstitutionality of Defendants' conduct, rather than making a definitive determination as to the existence of such facts for purposes of summary judgment and, as appropriate, resolving any material disputes of fact in Plaintiffs' favor, the court was willing only to assume the existence of such triable issues of fact and to assume their resolution in Plaintiffs' favor.

This approach is problematic under controlling law. The district court was obliged to "undertake[] the essential task of specifying what a reasonable jury could find the facts to be." *Lewis*, 604 F.3d at 1226. And the district court was *required* to resolve any disputes of fact in the light most favorable to the plaintiff unless "blatantly contradicted" by the video evidence, before turning to the issue of clearly established law. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see Est. of Taylor*, 16 F.4th at 756 ("[W]here the record does not unequivocally point in one direction and allows for a genuine dispute concerning the facts, '[a]ll disputed facts must be resolved in favor of the party resisting summary judgment.'" (alteration in original) (quoting *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018))); *Lewis*, 604 F.3d at 1226 ("Only then [after the court has determined the specific facts that a reasonable jury could infer based on the evidence] can the district court (and we, on

disputed facts in Plaintiffs' favor did nothing to relieve Plaintiffs of their burden here of defining a record-based factual universe as to which we could assess the existence of clearly established law. For instance, nothing in the court's general statements about the factual disputes it was prepared to resolve in Plaintiffs' favor equates to the specific factual findings that Plaintiffs infer from it. Contrary to Plaintiffs' assertions, nowhere did the court say that it was assuming as true that Defendants "fir[ed] 66 bullet shots into a vehicle occupied by three unarmed people who were attempting to surrender and posed no observable threat to the officers." Aplts.' Opening Br. at 26; *see also* Aplts.' Reply Br. at 22 n.7 (stating conclusorily that "[Defendants] in the instant case fired 66 bullet shots into a vehicle occupied by three unarmed people who were attempting to surrender and posed no observable threat to the officers").

In other words, notwithstanding Plaintiffs' contrary assertions, it cannot be reasonably argued that the district court's summary judgment order "along with the relevant record cited and discussed therein, results in it being assumed that none of

---

appeal) undertake the job of answering the question whether the defendant is entitled to qualified immunity on those facts as a matter of law.").

However, these concerns do not control the outcome here. As we have stressed throughout this opinion, Plaintiffs bear the burden of proof on the clearly established law issue, and clearly established law does not exist in a vacuum; instead, such law must be determined in relation to a specific set of facts. Irrespective of the problems associated with the court's approach in finding the relevant facts here, in order to establish reversible error on the clearly established law issue, it was incumbent on Plaintiffs to define a universe of record-based facts upon which we could conduct our clearly established law analysis. And Plaintiffs' failure to do so scuppers their appellate challenge. *See also supra* note 5.

the [Plaintiffs] were armed or an imminent threat to any [Defendants], and in fact were attempting to surrender as the [events] unfolded." Aplts.' Opening Br. at 28–29. Rather than relying on the district court's general statements regarding the areas of fact that it was willing to assume in Plaintiffs' favor, Plaintiffs were obliged to define here a record-based factual universe—viewing the facts in the light most favorable to them—which we could use in resolving the legal, clearly established law issue. But Plaintiffs failed to do so.

And, second, Plaintiffs' roundabout, indirect reliance on the district court's order resolving the motions to dismiss does not advance the ball for them one iota. In their briefing here, Plaintiffs quote from a portion of the district court's summary judgment order, where the court was reciting the procedural history of this case and specifically acknowledging—through citations and parentheticals containing quoted language—its rulings in resolving the motions to dismiss. In so doing, the district court quoted the following language: "Construing these facts as true, the Court finds that plaintiffs have plausibly alleged that defendants violated clearly established law by using deadly force, without being in imminent danger, against plaintiffs, who posed no threat to the officers and were not resisting." Aplts.' App. at 210 (quoting Dist. Ct.'s Order on Defs.' Mots. to Dismiss, filed Sept. 30, 2020).

However, Plaintiffs' reliance on this portion of the record where the district court was accepting as true certain facts for purposes of resolving Defendants' motions to dismiss is unavailing. It does not help Plaintiffs to carry their burden of proof of defining a universe of *record-based* facts to support our clearly established

law analysis.  It is axiomatic that, in resolving motions to dismiss, courts accept the well-pleaded factual averments of the plaintiff's complaint as true and construe the facts in the light most favorable to the plaintiff.  *See, e.g.*, *A.N. by & through Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) ("We review 'the district court's denial of a motion to dismiss based on qualified immunity de novo, accepting as true all well-pleaded factual allegations in the complaint and viewing the allegations in the light most favorable to the non-moving party.'" (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)).  Indeed, the district court recognized as much.  *See* Aplts.' App. at 169 n.1 (noting that the order's "facts are taken from plaintiffs' Amended Civil Rights Complaint With Request for Trial by Jury and are assumed true for purposes of this order unless otherwise noted" (citations omitted)).  However, this pleading-based approach is inapposite in the summary-judgment context.  In that context, as here, the plaintiff cannot rest on her well-pleaded factual averments; rather, the plaintiff must point to record evidence supportive of the plaintiff's position; this means that, though ordinarily the court accepts plaintiff's version of the facts as the starting point for the legal analysis, that version will be cognizable only if it is supported by record evidence.  *See, e.g.*, *Thomson*, 584 F.3d at 1312 ("[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record.").

As applied here, the upshot is this.  The district court properly accepted the well-pleaded factual averments of Plaintiffs' complaint in resolving the motions to dismiss.  And those averments did favor Plaintiffs' argument that the Defendants

22

used excessive force—in that, among other things, they depict Defendants as shooting at Plaintiffs' vehicle, even though Plaintiffs supposedly posed no threat to Defendants and were not resisting.  Yet Plaintiffs' citation to the portion of the record involving the district court's resolution of the motions to dismiss does not help them carry their summary-judgment burden.  Plaintiffs are no longer free to rely on the district court's acceptance of their complaint averments.  Rather, Plaintiffs are obliged to demonstrate that their version of the facts is supported by evidence in the record.  Stated otherwise, they are required to ground their version of the facts in such evidence.  Perhaps that record evidence would support Plaintiffs' argument that the Defendants used excessive force, as Plaintiffs' complaint averments did.  Perhaps not.  But either way, Plaintiffs are obliged here to rest their version of the facts— upon which they seek to defeat Defendants' assertion of qualified immunity—on record evidence, not pleading averments.  Only such a record-based version of the facts could form the foundation for our clearly established law analysis in the summary-judgment context.  Plaintiffs, however, have failed to provide us with such a version of the facts; they cannot do so by relying on the well-pleaded factual averments of the complaint that the district court accepted as true at the motion-to-dismiss stage of the proceedings.

The inquiry into the existence of clearly established law is not undertaken in a factual vacuum; rather, it turns on the closeness of the fit of the facts contained in the controlling caselaw to a universe of record-based facts in the case at bar.  Because Plaintiffs have failed to define for us on summary judgment a universe of record-

23

based facts, we have no factual foundation upon which to determine whether Defendants violated Plaintiffs' clearly established legal rights.  Stated otherwise, by failing to define for us the operative universe of record-supported facts, Plaintiffs have prevented us from determining what law was clearly established.  And because Plaintiffs bear the burden of showing that applicable clearly established law defeats Defendants' qualified-immunity defense, this definitional failure as to the operative factual universe sounds the death knell for their appellate challenge.  In short, we have no basis to disturb the district court's determination—on clearly established law grounds—that Defendants are entitled to qualified immunity.

## V

For the above reasons, we **AFFIRM** the district court's judgment.