**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANYALE BLACKMORE,

    Plaintiff - Appellant,

and

VINCENT BLACKMORE,

    Plaintiff,

v.

JARED CARLSON; ERIC DEMILLE;
HURRICANE CITY,

    Defendants - Appellees,

and

LA-NORMA RAMIREZ; WASHINGTON
COUNTY,

    Defendants.

No. 24-4074
(D.C. No. 4:21-CV-00026-DN-PK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

If a district court provides multiple alternative grounds for its ruling and the appellant does not challenge *all* those grounds in the opening brief, then we may affirm the ruling. We face that scenario in this appeal as to one claim. Law enforcement officers arrested Plaintiff Danyale Blackmore. She alleges they unlawfully seized her and used excessive force during her arrest. Plaintiff appeals the district court's decision to grant Defendants' summary judgment motion on her unlawful seizure claim. Plaintiff, however, adequately appeals only two of the district court's three independent holdings regarding the unlawful seizure. We therefore affirm the district court's grant of summary judgment on Plaintiff's unlawful seizure claim for her failure to challenge an alternative holding.

Plaintiff also challenges the district court's decision to grant Defendants' motion to dismiss her excessive force claim based on qualified immunity. We agree with the district court that the law regarding her excessive force claim was not clearly established. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

A guest at My Place Hotel in Hurricane City, Utah, locked himself out of the hotel lobby in the early morning hours. To walk into the lobby of the hotel, a person must go through two doors. The second door leading to the lobby was locked. The hotel posted a sign requesting guests to use a phone in the vestibule if in need of assistance, but the guest did not see this sign or use the phone. Instead, he kicked the second sliding glass door from its track, entered the lobby, and called 911 after not seeing anyone at the desk.

Hurricane City Police Department officers Jared Carlson and Eric DeMille responded to the call. The guest met the officers in the parking lot of the hotel. The guest told the officers that he could not get back into his room and asked Carlson to help him. The guest and the officers then entered the lobby through the kicked-in door. Nobody was at the front desk. A sign on the front desk read: "We are away from the front desk assisting another guest. For immediate assistance, please dial '0' on the phone in the lounge."

Carlson picked up the lobby phone and the phone connected him with Plaintiff Danyale Blackmore—the co-owner of the hotel. Although Carlson was wearing a body camera, the camera's microphone did not pick up Plaintiff's side of the conversation. Carlson confirmed he was speaking with a hotel representative and requested twice that Plaintiff come to the front desk. Carlson identified himself as a Hurricane Police officer. He explained that a guest was locked out of his room and asked for Plaintiff to please come and help him. Carlson told her to call the Hurricane Police Department to verify. He asked her to look at the parking lot to verify the law enforcement vehicles there. Carlson told Plaintiff that the guest did not see the sign to call. Carlson again asked Plaintiff to dial 911. She did not. Carlson explained he was in the lobby and that he got there because the door was open. Carlson told Plaintiff, "It's open ma'am, and I don't appreciate you swearing at me." Carlson repeated all the basic information again and asked her to please come down because he would like to leave.

3

After Carlson hung up, he told DeMille that Plaintiff was cussing him out, saying "it's full of crap," and that she was not going to come down or call the police department. At Carlson's suggestion, the guest called Plaintiff from the lobby phone and explained he did not have a key to his room and he kicked the lobby door open to get into the lobby.

Plaintiff then came downstairs. She was walking down a hallway towards the lobby. Before she entered the lobby, she looked towards the officers and said, "I want him gone. Right now." She pointed at the guest and said, "I want him out. Go away. Get your shit." Carlson told Plaintiff to "hold on, hold on, hold on." Plaintiff responded, "no." Plaintiff again told the guest to "get his shit" and Carlson again said, "hold on." Carlson asked Plaintiff to talk away from the guest in the hallway. Plaintiff turned and started moving down the hallway. She stopped and continued to explain her view of the events. Carlson told her to "stop." The guest tried to interject, and Carlson told him to "shut up and go over there" while pointing towards the front of the lobby. DeMille then directed the guest away from Plaintiff and Carlson. The guest complied.

Carlson again directed Plaintiff to go down the hallway and Plaintiff again told the officers to get rid of the guest. She moved down the hallway a few steps, turned around, and said, "no, he opened that door. That door was open with a plan—open. If he can get in there, then he can get in his room. And he kicked my front door open, that was locked." Plaintiff said she had procedures and started to walk back towards the lobby. Carlson reached out his arm to block her and said, "hold on, hold

4

on." Plaintiff continued walking back towards the lobby and they came into physical contact. Carlson pushed Plaintiff backwards with his left arm from the hallway into an alcove adjacent to the hallway. Carlson told Plaintiff to "stop."

Plaintiff told Carlson, "Can you not touch me?" He told her to "just stop." Plaintiff shouted, "[d]on't fucking touch me!" She moved away from Carlson backwards and to her right. Carlson followed and repeated for her to "stop." Plaintiff again shouted "don't touch me" and moved away back to her left. Carlson grabbed her right shoulder and pushed her against a wall. Carlson grabbed Plaintiff's right hand with his right hand and turned her towards the wall. Plaintiff's chest was touching the wall. Carlson pulled her right arm behind her back with his right hand while pressing Plaintiff into the wall with his left forearm. DeMille then began to assist Carlson in moving Plaintiff's hands behind her back. Plaintiff then started screaming and struggling. Carlson told her to put her hands behind her back. Plaintiff shouted "no, no, no." Plaintiff struggled to keep her arms in front of her. Carlson again stated, "[p]ut your hands behind your back now." She again shouted, "[n]o!" Carlson and DeMille eventually moved her hands behind her back. She kept shouting "no" and "stop" and "don't touch me."

Carlson told Plaintiff he was arresting her. She asked, "[w]hy? For what? Why am I under arrest? Why am I under arrest? Stop it!" She also called Carlson and DeMille "assholes," explained she hated cops, and told them this was her hotel and to stop. Carlson also told her to stop. She responded, "[o]kay." He said, "I told

5

you to stop. I told you not to approach him. I stopped you from going up to him because I was concerned that you were going to confront him."

Carlson put Plaintiff in his law enforcement vehicle and transported her to the Washington County Purgatory Correctional Facility. Prosecutors brought charges in Utah state court, but a Utah state jury returned a not guilty verdict on these criminal charges.

Plaintiff and her husband sued Carlson, DeMille, and Hurricane City, among others, alleging civil rights violations, two of which are relevant here: (1) unlawful search and seizure against both officers in their individual capacities; and (2) excessive force against both officers in their individual capacities.[1] Plaintiffs claimed that the officers unlawfully detained and arrested Plaintiff Danyale Blackmore and that the officers used excessive force against her. Carlson, DeMille, and Hurricane City moved to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion in part, dismissing Plaintiffs' excessive force claim, determining that the law entitled the officers to qualified immunity.

Defendants filed a motion for summary judgment seeking dismissal of the remaining claims. The district court dismissed the unlawful seizure claim, determining that Defendants had probable cause to arrest Plaintiff and that the law entitled the officers to qualified immunity. Plaintiff Danyale Blackmore appealed.

---

[1] Plaintiff's husband co-owned the hotel with her. He is not a party to this appeal.

6

II.

On appeal, Plaintiff challenges only the district court's decisions regarding her unlawful seizure and excessive force claims. Plaintiff does not appeal the district court's dismissal of other alleged civil rights violations. We begin with the unlawful seizure claim before turning to the excessive force claim.

A.

The Fourth Amendment protects the people's right to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Defendants contend that they arrested Plaintiff on two charges—disorderly conduct and interference with a peace officer. The district court granted summary judgment on Plaintiff's unlawful seizure claim. It did so on three grounds: (1) no controlling case law or robust body of case law from other circuits gave notice to Defendants that arresting Plaintiff for disorderly conduct under the circumstances was a clear violation of her rights; (2) Plaintiff resisted her detention and arrest after she should have known Defendants were detaining or arresting her, giving the officers probable cause to arrest her; and (3) the law was not clearly established that Defendants could not arrest Plaintiff for resisting arrest or detainment where she was screaming, trying to turn around, and attempting to keep her arms from being pulled behind her after being told to put her hands behind her back.

We review de novo a district court's denial of summary judgment. Duda v. Elder, 7 F.4th 899, 910 (10th Cir. 2021) (quoting Sawyers v. Norton, 962 F.3d 1270,

1282 (10th Cir. 2020)).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To defeat a claim of qualified immunity on summary judgment, Plaintiff must raise a genuine issue of material fact that (1) "[D]efendant's actions violated [Plaintiff's] constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct." Paugh v. Uintah Cnty., 47 F.4th 1139, 1153 (10th Cir. 2022) (quoting Est. of Beauford v. Mesa Cnty., 35 F.4th 1248, 1261 (10th Cir. 2022)).

Here, the district court provided three independent reasons why Plaintiffs' unlawful seizure claim failed.  Plaintiff appealed the district court's qualified immunity determination as to the disorderly conduct arrest and the district court's decision that Plaintiff's resistance to arrest justified the seizure.  But Plaintiff did not appeal the district court's alternative holding that the law was not clearly established that Defendants could not arrest Plaintiff for resisting arrest or detainment.[2]

We affirm the district court based on this alternative holding.  "If the district court states multiple alternative grounds for its ruling and the appellant does not challenge all those grounds in the opening brief, then we may affirm the ruling." Rivero v. Bd. of Regents of Univ. of N.M., 950 F.3d 754, 763 (10th Cir. 2020) (citing

---

[2] At oral argument, Plaintiff's counsel confirmed that two specific theories exist under which Defendants could have lawfully seized her: resisting arrest and disorderly conduct.  Plaintiff's counsel answered affirmatively that Plaintiff must convince us that neither one of those theories would be applicable for Plaintiff to prevail on appeal.

8

Anderson v. Spirit Aerosystems Holdings, Inc., 827 F.3d 1229, 1236 n.2 (10th Cir. 2016) and Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs., 569 F.3d 1244, 1252 (10th Cir. 2009)). In "Point II" of Plaintiff's opening brief, in which Plaintiff appeals the district court's conclusion that Defendants had probable cause to arrest Plaintiff for interference and resistance, Plaintiff contends qualified immunity does not exist because the lapel video demonstrates the existence of multiple questions of fact regarding Plaintiff's alleged refusal to comply and her resistance to Defendant Carlson's orders. She asserts that this "eviscerates" probable cause. This statement and her argument in this section relate to the alleged constitutional violation.

But "[t]o carry her burden on the second prong of our qualified immunity analysis, [Plaintiff] must show that [Defendants'] constitutional misconduct violated her clearly established right." Works v. Byers, 128 F.4th 1156, 1165 (10th Cir. 2025). A right is clearly established where the law is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). For a constitutional right to be clearly established, Tenth Circuit or Supreme Court precedent must be *particularized to the case* at issue. Works, 128 F.4th at 1165–66 (citing Sanchez v. Guzman, 105 F.4th 1285, 1292 (10th Cir. 2024)). Although "[w]e do not require a case directly on point," we may not "define clearly established law at a high level of generality." Mullenix, 577 U.S. at 12 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741–42 (2011)). Rather, controlling precedent that encompasses "'materially similar conduct' or applies 'with obvious clarity' to

9

the conduct at issue" clearly establishes the right. Shepherd v. Robbins, 55 F.4th 810, 815 (10th Cir. 2022) (quoting Apodaca v. Raemisch, 864 F.3d 1071, 1076 (10th Cir. 2017)).

Here, the only time Plaintiff mentions clearly established law on this topic in her opening brief is in one sentence stating, "[i]t was clearly established well before January 2020 that officers violate Fourth Amendment rights when they engage in a warrantless arrest without probable cause." But "[s]imply to say the law has long recognized one's right to be free from arrest absent probable cause casts way too high a level of generality over our inquiry." Culver v. Armstrong, 832 F.3d 1213, 1218 (10th Cir. 2016) (citing Mullenix, 577 U.S. at 12). Because Plaintiff cites no cases to show that the law is clearly established and because Defendants' conduct was not an "obvious" violation of Plaintiff's rights, we affirm the district court's order granting summary judgment on Plaintiff's unlawful seizure claim.

B.

Next, Plaintiff contends the district court erred in dismissing her excessive force claim for failure to state a claim. We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss, including a dismissal based on qualified immunity. Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021) (citing Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013)). Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). To survive a qualified immunity defense at the motion to dismiss stage, a plaintiff must have alleged sufficient facts to show that: (1) the

defendant plausibly violated his or her constitutional rights, and (2) the law clearly established those rights at the time. Brown v. City of Tulsa, 124 F.4th 1251, 1265 (10th Cir. 2025) (quoting Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008)). If a plaintiff fails to satisfy either prong, we must grant qualified immunity. Id. (citing Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)). A plaintiff who fails to plead a plausible claim is subject to dismissal. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). We accept all well-pleaded factual allegations as true and view them "in the light most favorable to the plaintiff." Truman, 1 F.4th at 1235 (quoting Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007)).

A plaintiff's excessive force claim in the context of an arrest implicates the constitutional right to be free from unreasonable search and seizure under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394 (1989). To prevail on such a claim, a plaintiff "must show *both* that a 'seizure' occurred and that the seizure was 'unreasonable.'" Thomas v. Durastanti, 607 F.3d 655, 663 (10th Cir. 2010) (quoting Childress v. City of Arapaho, 210 F.3d 1154, 1156 (10th Cir. 2000)). No one disputes Defendants seized Plaintiff. So we focus on whether the uncontested seizure was reasonable.

Plaintiff argues on appeal that the law was clearly established that the officers used excessive force here and the district court erred in granting qualified immunity on the excessive force claim. In support of this argument, Plaintiff cites four cases. We can distinguish the facts here from those Plaintiff cites. We thus decline to

address the first prong of the qualified immunity test and conclude that the law was not clearly established.

Plaintiff cites to McCoy v. Meyers, 887 F.3d 1034 (10th Cir. 2018), where police responded to a call at a motel alleging that McCoy was holding a woman and a baby hostage in a motel room with a gun. After officers entered the hotel room, McCoy pointed a gun at the officers and the woman. After officers told McCoy to drop the gun, McCoy did so, and the officers removed the hostages. An officer pulled McCoy off the bed to the ground, where McCoy reached for the officer's gun. The officer put McCoy face down on the ground, hands behind his back, and put him in a carotid restraint. McCoy passed out and the officers handcuffed him and zip tied his feet. A different officer—Officer Meyers—came into the room and brought McCoy back to consciousness, allowed other officers to beat him up, and then put him back in a carotid restraint, despite McCoy not resisting. McCoy passed out again. We held that although the law entitled officers to qualified immunity for the pre-restraint force, the law did not entitle officers to qualified immunity for the force used after that because the officers had effectively subdued McCoy.

Additionally, Plaintiff cites McWilliams v. DiNapoli, 40 F.4th 1118 (10th Cir. 2022), where law enforcement responded to a call from the manager of a marina about two men in a prohibited golfcart who refused to leave. When law enforcement arrived, and after a discussion, McWilliams and the driver of the golf cart began to back out of the parking spot when the officer hit a cigarette out of McWilliams' hand. McWilliams got out of the cart and began yelling and gesturing at the officer. The

12

officer took a step back and told him to get back, but then tilted his head down and hit McWilliams' nose with the brim of his hat. The officer then punched McWilliams, tackled him, and put him in a chokehold. We held that the law did not entitle the officer to qualified immunity.

Third, Plaintiff cites Dixon v. Richer, 922 F.2d 1456 (10th Cir. 1991). In Dixon, officers stopped Dixon in his van to ask about another individual someone spotted him with suspected of a misdemeanor. Dixon submitted to a frisk by putting his hands up against the van. An officer kicked him during the frisk, and Dixon asked, "Is that fucking necessary?" The officers called for back up and told him to put his hands back up against the van. They patted him down again and kicked him again, without warning. When Dixon began to fall, the officers hit him in the stomach with a metal flashlight. Once on the ground, the officers got on top of him and beat and choked him. We held that the officers' conduct after they had already frisked Dixon the first time was unreasonable because he was not a threat to the officers and was not making any aggressive movements.

Finally, Plaintiff cites Casey v. City of Federal Heights, 509 F.3d 1278 (10th Cir. 2007). In Casey, the plaintiff had taken a file folder from a courthouse with him to get money out of his car to pay a fine, which may have been a misdemeanor. The officer asked for the file, and Casey held up his briefcase with the file in an outside pocket. The officer did not take the file, and Casey moved around him to go back inside the courthouse. The officer, without explanation, put Casey in an arm-lock and then jumped on his back, ripping his shirt. The officer, after some struggle, told

13

him he was under arrest but did not inform him to stop resisting.  Eventually, other officers came to assist and officers tased Casey twice, pushed him to the ground, and banged his head repeatedly into the concrete.  We held that the law did not entitle the officer to qualified immunity, taking also into consideration that he did not mitigate the other officers' actions.

Plaintiff argues that the law does not require her to go on a "scavenger hunt" for an identical "hotel lobby" case.  Fair enough.  But she must cite us law *particularized to the case* at issue.  She has failed.  All the cases Plaintiff cites involve much more egregious officer behavior than here.  They all involve kicking, punching, pushing to the ground, or otherwise more excessive force.  Plaintiff argues that Officer Carlson "effectively subdued" her, similar to McCoy or Dixon, after Carlson pushed her into the hallway alcove.  But Carlson did not subdue her in the same way as being unconscious and handcuffed or being hands up against a van already having been frisked.  Plaintiff was still moving, yelling, and trying to get around the officers and to the lobby when Carlson turned her against the wall.  And after that, she still resisted.  Even though she was only a misdemeanant, at best, and she did not pose much of a threat to the officers, the law allows officers to use some force in making an arrest. See Graham, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").  We thus conclude Plaintiff did not carry her burden to

14

show that the law was clearly established that the officers' use of force here was unconstitutional.

AFFIRMED.


Entered for the Court


Joel M. Carson III
Circuit Judge